# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| DMITRII YEVGENYEVICH KUSHNAREV, | _____ |
| (a/k/a Vitaly Ershov) | |
| (a/k/a Sergei Guliugin) | |
| (a/k/a Stanislav Iasiukevich) | |
| (a/k/a Ula Kairiene) | COMPLAINT |
| (a/k/a Oskaras Korsunovas) | |
| (a/k/a Ilja Krumberg) | |
| (a/k/a Rimantas Labanauskas) | |
| (a/k/a Stanislav Lasiukevich) | |
| (a/k/a Edmundus Paskevicius) | |
| (a/k/a Aesop Pozdyshev) | |
| (a/k/a Denis Pozdyshev) | |
| (a/k/a Ruben Salguero Romero) | |
| (a/k/a Donatas Sestokas) | |
| (a/k/a Arnestas Skruibys) | |
| (a/k/a Dainius Sopranas) | |
| (a/k/a Dmytro Tkach) | |
| (a/k/a Reiko Valling) | |
| (a/k/a Ceslovas Verbauskas) | |
| (a/k/a Mikhailo Zahorulko) | |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1.      Beginning no later than March 2014, and continuing through at least May 2021 (the "Relevant Period"), Russian national Dmitrii Yevgenyevich Kushnarev ("Kushnarev") participated in an "account takeover attack" ("ATO") scheme that compromised hundreds of retail brokerage accounts in the United States and a smaller number in Canada.  These accounts were hacked and used—without the owners' knowledge or consent—to buy and sell thinly traded securities listed on the NYSE, NASDAQ, and OTC Markets.  These ATOs manipulated the price of the target securities, allowing Kushnarev to take advantage of artificial price increases by selling previously acquired shares into the market from dozens of brokerage accounts he maintained under false names.  ATOs by Kushnarev or unknown persons conspiring with him were also used to force hacked retail accounts to buy overpriced options on low-volume securities, which Kushnarev sold to the hacked accounts from one of his numerous alias accounts.

2.      During the Relevant Period, Kushnarev was involved in hundreds of ATOs of U.S. and Canadian retail brokerage accounts at no fewer than 10 brokerage firms in which hacked accounts were forced to purchase the securities of over 380 different NYSE, NASDAQ, and OTC Market issuers.  Kushnarev generated

approximately $31 million in gross proceeds and $1.5 million in net profits from the scheme.

3. To avoid detection, Kushnarev made his profitable trades in dozens of U.S. and offshore brokerage accounts that he established using false identities. To establish these alias accounts, Kushnarev submitted account opening applications containing false information, including false names, false residential addresses, false citizenship and employment information, and other false personal data. Kushnarev submitted electronic images of false passports and other false documents with many of the applications. During the Relevant Period, Kushnarev also used false names, false addresses, and other false personal information to open numerous bank accounts, which he used to deposit and transfer funds related to the scheme.

4. As a result of the conduct alleged herein, Kushnarev violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 9(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78i(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

5. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§

77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

6. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].

7. In connection with the transactions, acts, practices, and courses of business described in this Complaint, Kushnarev, directly and indirectly, made use of the means and instruments of transportation or communication in interstate commerce or the means and instrumentalities of interstate commerce, or the mails.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3) because Kushnarev is a foreign national residing outside the United States, and pursuant to 28 U.S.C. §1391(b)(2) because many of the hacked accounts were held at a broker-dealer which maintains its computer servers in the Northern District of Georgia, and because multiple retail account victims resided in the Northern District of Georgia at the time of the ATOs.

## **DEFENDANT**

9. Dmitrii Yevgenyevich Kushnarev ("Kushnarev"), age 58, is a Russian national who, on information and belief, resides in Russia. Kushnarev served a prison sentence in Russia from 2002-2004 for fraud.

## FACTS

10. For his stock manipulation scheme, Kushnarev would acquire shares of thinly traded NYSE, NASDAQ, and OTC Market stocks in his alias brokerage accounts.

11. Next, Kushnarev or unknown individuals conspiring with him would hack into U.S. and Canadian retail brokerage accounts and, posing as the accountholders, make large unauthorized purchases of the same thinly traded stocks that Kushnarev had just acquired in his alias accounts.

12. These purchases typically stimulated trading activity in the market and caused the prices of the target stocks to temporarily increase.

13. Kushnarev would profit from the market manipulation by "selling into" the hacks from his alias brokerage accounts.

14. Alternatively, Kushnarev would engage in short selling of target stocks in coordination with the ATOs and cover his position when the stock prices normalized.

15. At times, Kushnarev or unknown persons conspiring with him would facilitate his closing out of his short positions by launching ATOs to force the hacked accounts to sell target shares. Kushnarev's stock sales would often execute against both the forced purchases in the ATOs and purchases by other uninvolved market participants.

16. As part of the scheme to manipulate share prices, Kushnarev would at times buy and sell shares of target stocks through his alias brokerage accounts in advance of the ATOs to increase trading volume and create the appearance of liquidity in the target stocks.

17. Moreover, in ATOs designed to drive up share prices, Kushnarev or persons working with him would sometimes engage in unauthorized sales of target stocks—in addition to unauthorized purchases—to increase trading volume and create the appearance of liquidity.

18. An example of Kushnarev "selling into" an ATO is as follows: On April 27, 2016, between 11:51 and 11:58 a.m. ET, a hacked account at a large U.S. retail brokerage was forced to purchase approximately $125,000 worth of stock (46,200 shares) in Crypoport, Inc. ("CYRX"), then a thinly traded NASDAQ stock.

19. CYRX's average daily trading volume over the prior 30 trading days was approximately 18,000 shares, but on the day of the ATO its trading volume spiked to 229,800 shares.

20. CYRX opened at $2.50 and closed at $2.52 on the ATO date but reached an intra-day high of $2.85.

21. From 10:50 to 11:08 a.m. ET, four foreign brokerage accounts controlled by Kushnarev, but maintained in the aliases "Vitaly Ershov" and

"Blazys Algimantas," purchased CYRX for $2.51 to $2.60 per share. During and just after the ATO, between 11:56 a.m. and 12:41 p.m. ET, the "Ershov" and "Algimantas" accounts sold the CYRX shares at prices between $2.74 and $2.80 per share, taking advantage of the price run-up caused by the forced purchases in the hacked account and generating sales proceeds of approximately $78,700 and net profits of approximately $7,000.

22. In another such example, on March 9, 2018, between 12:17 p.m. and 12:30 p.m. ET, a hacked account held at a Canadian retail brokerage was forced to buy and sell thousands of shares of Evofem Biosciences Inc. ("EVFM") common stock, which was then trading on the NASDAQ exchange.

23. At 12:28 p.m. ET that day, while the ATO was still in progress, Kushnarev, using an alias account in the name of "Ershov," bought 4,089 shares of EVFM at $6.75 per share.

24. Two minutes later, at 12:30 p.m. ET, Kushnarev sold those shares out of the "Ershov" account at $6.95 per share for a profit of approximately $818, with the sale, upon information and belief, executing directly against the hacked account at the Canadian brokerage.

25. Starting around April 2019, the focus of Kushnarev's scheme shifted from thinly traded stocks to thinly traded options.

26. Using alias accounts held at U.S.-based brokerages, Kushnarev

would typically purchase out-of-the-money call and put options in NYSE and NASDAQ-listed securities, and then offer these for sale at inflated prices.

27. Accounts subjected to ATOs would be made to bid on the options, and the forced purchases would match with sales from Kushnarev's alias accounts.

28. For example, on May 8 and May 12, 2020, Kushnarev, using an alias account opened in the name "Oskaras Korsunovas," purchased out-of-the money put options on shares of NYSE Arca-listed Global Robotics and Automation Index ETF ("ROBO") for $.05 to $.16 per 100 contracts.

29. On May 13, 2020, a retail account held at a large U.S. brokerage was hacked and forced to buy 83 out-of-the-money put option contracts on ROBO shares for $.30 per 100 contracts.

30. The forced purchase matched with the sale of 83 of the same options from the "Korsunovas" account, generating $2,490 in sales proceeds and $1,530 in net profits.

31. In another example, on May 12, 13, and 14, 2021, Kushnarev, using an alias account opened in the name "Ruben Salguero Romero," purchased out-of-the-money put options on shares of NASDAQ-listed First Business Financial Services, Inc. ("FBIZ") for $.20 to $.50 per 100 contracts.

32. On May 18, 2021, a retail account held at a large U.S. brokerage was

hacked and forced to purchase 78 out-of-the-money put option contracts on FBIZ for $2 per 100 contracts.

33. The forced purchase matched with the sale of 78 of the same options contracts from the "Salguero Romero" account, generating $15,600 in sales proceeds and $12,680 in net profits.

34. The ATOs in which Kushnarev was involved, upon information and belief, did not involve the compromise of any broker-dealer's systems, but instead resulted from security issues relating to the underlying retail accountholders, such as passwords that had been stolen or compromised in other incidents.

35. Kushnarev maintained at least 18 U.S. and 20 foreign brokerage accounts (with U.S. market access) under false names, which he used to trade into the ATOs.

36. To establish these alias accounts, Kushnarev submitted account opening applications containing false information, including false names, false residential addressees, false citizenship and employment information, and other false personal information.

37. Kushnarev submitted electronic images of false passports and other false documents with many of the applications. Kushnarev also opened numerous bank accounts using false names, addresses, and other personal information to deposit and transfer funds related to the scheme.

38. Known false identities under which Kushnarev maintained U.S. and foreign brokerage and bank accounts to carry out the scheme include:

> Blazys Algimantas
> Ramunas Bukusinskas
> Saulius Cvetkauskas
> Olegs Dukalevs
> Vitaly Ershov
> Sergei Guliugin
> Stanislav Iasiukevich
> Ula Kairiene
> Oskaras Korsunovas
> Ilja Krumberg
> Rimantas Labanauskas
> Stanislav Lasiukevich
> Edmundus Paskevicius,
> Aesop Pozdyshev
> Denis Pozdyshev
> Ruben Salguero Romero
> Donatas Sestokas
> Arnestas Skruibys
> Dainius Sopranas
> Dmytro Tkach
> Reiko Valling
> Ceslovas Verbauskas
> Mikhailo Zahorulko

39. The following table lists the false names used by Kushnarev in opening the U.S. brokerage accounts, the claimed nationality of the fake identity, the brokerage (with a letter substituted for its name), and the approximate date on which the account was opened:

| Kushnarev Alias | Purported Nationality | U.S. Brokerage | Approx. Date Opened |
|---|---|---|---|
| Dukalevs, Olegs | Malta | Broker A | 4/10/2019 |

| | | | |
|---|---|---|---|
| Kairiene, Ula | Lithuania | Broker B | 6/10/2019 |
| Kairiene, Ula | Czech Republic | Broker C | 2/6/2020 |
| Korsunovas, Oskaras | Poland | Broker D | 3/30/2020 |
| Korsunovas, Oskaras | Poland | Broker E | 2/21/2020 |
| Korsunovas, Oskaras | Poland | Broker B | 3/9/2020 |
| Korsunovas, Oskaras | Poland | Broker C | 3/17/2020 |
| Korsunovas, Oskaras | Poland | Broker F | 3/12/2020 |
| Labanauskas, Rimantas | Lithuania | Broker G | 10/25/2017 |
| Labanauskas, Rimantas | Poland | Broker H | 10/26/2019 |
| Labanauskas, Rimantas | Poland | Broker F | 11/1/2019 |
| Salguero Romero, Ruben | Spain | Broker F | 4/13/2021 |
| Sestokas, Donatas | Poland | Broker B | 10/11/2019 |
| Sestokas, Donatas | Poland | Broker I | 6/18/2020 |
| Skruibys, Arnestas | Poland | Broker J | 10/29/2019 |
| Skruibys, Arnestas | Poland | Broker A | 5/18/2020 |
| Skruibys, Arnestas | Poland | Broker F | 12/10/2019 |
| Skruibys, Arnestas | Poland | Broker K | 4/8/2020 |

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. §§ 77q(a)(1)]

40. The Commission realleges and incorporates by reference herein paragraphs 1 through 39.

41. By reason of the conduct described above, Kushnarev, in the offer or

sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, employed devices, schemes, or artifices to defraud purchasers or sellers of the securities.

42. While engaging in the course of conduct described above, Kushnarev acted with scienter, that is, with an intent to deceive, manipulate, or defraud, or with a severely reckless disregard for the truth.

43. By reason of the foregoing, Kushnarev violated, and unless enjoined will continue to violate, Section 17(a)(1) of the Securities Act.

## SECOND CLAIM FOR RELIEF

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

44. The Commission realleges and incorporates by reference herein paragraphs 1 through 39.

45. By reason of the conduct described above, Kushnarev, in the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly,

    a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

  b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchaser.

46. While engaging in the course of conduct described above, Kushnarev acted at least negligently.

47. By reason of the foregoing, Kushnarev violated, and unless enjoined will continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act.

**THIRD CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]**
**and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

48. The Commission realleges and incorporates by reference herein paragraphs 1 through 39.

49. Kushnarev, in connection with the purchase or sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

  a. employed devices, schemes, and artifices to defraud;

  b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

  c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the Client and/or others,

all as more particularly described above.

50. By reason of the foregoing, defendant Kushnarev violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) thereunder.

## FOURTH CLAIM FOR RELIEF
### Violations of Section 9(a)(2) of the Exchange Act
### [15 U.S.C. § 78i(a)(2)]

51. The Commission realleges and incorporates by reference herein paragraphs 1 through 39.

52. Defendant Kushnarev, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails or the facilities of a national securities exchange, effected singly or in concert with others, a series of transactions in a security or securities that created actual or apparent active trading in such security or securities, and/or raised or depressed the price of such security or securities, for the purpose of inducing the purchase or sale of such security or securities by others.

53. By reason of the foregoing, Defendant Kushnarev violated, and unless enjoined, will continue to violate Section 9(a)(2) of the Exchange Act.

## PRAYERS FOR RELIEF

WHEREFORE, the Commission respectfully prays for:

**I.**

Findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendant named herein committed the violations alleged herein.

**II.**

A permanent injunction enjoining the Defendant from violating, directly or indirectly, or aiding and abetting violations of, the laws and rules alleged to have been violated in this complaint.

**III.**

An order requiring the disgorgement by the Defendant of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

**IV.**

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] imposing civil penalties against the Defendant.

V.

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

## JURY TRIAL DEMAND

The Commission hereby demands a jury trial as to all issues so triable.

This 22nd day of September, 2025.

   /s/Robert K. Gordon
Robert K. Gordon
Senior Trial Counsel
Georgia Bar No. 302482
gordonr@sec.gov

M. Graham Loomis
Supervisory Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

United States Securities and Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326
404-842-7600